# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| V.I.P. MOTOR CARS LTD., McGRATH AUTOMOTIVE GROUP, INC., HODGES IMPORTED CARS, INC. d/b/a HODGES SUBARU, PATSY LOU CHEVROLET, INC., LANDERS McLARTY LEE'S SUMMIT MO, LLC d/b/a LEE'S SUMMIT CHRYSLER DODGE JEEP RAM and d/b/a LEE'S SUMMIT NISSAN, RENO DODGE SALES, INC. d/b/a DON WEIR'S RENO DODGE, and JOHN GREENE CHRYSLER DODGE JEEP, LLC, *et al.*, on behalf of themselves and all others similarly situated, | Master File No. 2:12-md-02311 Case No. **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | |
| ROBERT BOSCH GMBH, and ROBERT BOSCH LLC, | |
| Defendants. | |
| IN RE ELECTRONIC BREAKING SYSTEMS | |
| THIS RELATES TO: AUTOMOBILE DEALERSHIP ACTIONS | |

## AUTOMOBILE DEALERSHIP PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs V.I.P. Motor Cars Ltd. ("Plaintiff V.I.P."); McGrath Automotive Group, Inc. ("Plaintiff McGrath"); Hodges Imported Cars, Inc. d/b/a Hodges Subaru ("Plaintiff Hodges"); Patsy Lou Chevrolet, Inc. ("Plaintiff Patsy Lou"); Landers McLarty Lee's Summit MO, LLC d/b/a Lee's Summit Chrysler Dodge Jeep Ram and d/b/a Lee's Summit Nissan ("Plaintiff Lee's Summit"); Reno Dodge Sales, Inc. d/b/a Don Weir's Reno Dodge ("Plaintiff Don Weir"); and John Greene Chrysler Dodge Jeep, LLC ("Plaintiff John Greene") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to themselves and upon information and belief as to all other matters, and based on the investigation of counsel, bring this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, consumer protection, and unjust enrichment laws. Plaintiffs demand a jury trial and allege as follows:

## NATURE OF ACTION

1.    This lawsuit is brought as a proposed class action against Defendants Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch" or "Defendants"),[1] named co-conspirators Continental AG, Continental Teves AG & Co. oHG, Continental Automotive GmbH, and Continental Automotive Systems, Inc. (together, "Continental"), and unnamed co-conspirators, manufacturers, and/or

_____

[1] At the time of this filing, Plaintiffs have settled with Bosch.

suppliers of Electronic Braking Systems (defined below) globally and in the United States, for engaging in a long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for Electronic Braking Systems. According to the United States Department of Justice ("DOJ"), Defendants' and their co-conspirators' conspiracy successfully targeted the United States automotive industry, raising prices for car manufacturers and automobile dealers alike.

2.     Plaintiffs seek to represent all automobile dealers that, during the period from and including February 13, 2007 through such time as the anticompetitive effects of the Defendants' conduct ceased (the "Class Period"), purchased a new four-wheeled passenger automobile, van, sport utility vehicle, crossover, or pickup truck ("Vehicle") in the United States which included one or more Electronic Braking System as a component part, which were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants.

3.     Braking systems are an essential input for car manufacturers. There are two main braking systems available: Electronic Braking Systems—the subject of this complaint—and hydraulic braking systems. Both systems are made up of additional component parts. Electronic braking systems prevent cars from skidding by providing electronic stability controls when braking (anti-lock braking system or

"ABS") or under all driving conditions (electronic stability control or "ESC"). Hydraulic braking systems consist of an actuation system and a foundation system. The actuation system is further made up of a brake booster and main brake cylinder, while the foundation system is further made up of a disc brake with saddle or drum brake and wheel brake cylinder. Both Electronic Braking Systems and hydraulic braking systems can be contained within the same vehicle.

4.      Defendants manufacture, market, and/or sell Electronic Braking Systems throughout and into the United States. Defendants and their co-conspirators agreed, combined, and conspired to fix, raise, maintain and/or stabilize prices, rig bids, and allocate the market and customers in the United States for Electronic Braking Systems.

5.      The DOJ's Antitrust Division conducted a broad criminal investigation into illegal price-fixing and bid-rigging in the automotive parts industry. As part of its criminal investigation, the DOJ sought information about unlawful anticompetitive conduct in the market for a number of different but related automotive parts, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in the offices of a number of major competitors in the automotive parts industry. The automotive parts investigation is the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the alleged

illegal conduct and its impact on American businesses. The ongoing cartel investigation of price-fixing and bid-rigging in the automotive parts industry has yielded more than $2.9 billion in criminal fines. The European Commission's ("EC") Directorate General for Competition ("DG Competition") has also conducted dawn raids at the European offices of several automotive parts manufacturers.

6.      In September 2014, the EC carried out inspections of Continental's premises related to a hydraulic braking systems conspiracy, leading Continental to submit a leniency application on December 9, 2014 disclosing its bilateral contacts with Bosch regarding sales of electronic braking systems to an automobile manufacturer.

7.      On February 21, 2018, the EC concluded that Defendant Bosch and co-conspirator Continental violated EU competition law by exchanging information with the aim of coordinating their respective market behaviors, including pricing practices.

8.      Defendants and their co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate the supply of, rig bids for, and to fix, stabilize, and maintain the prices of Electronic Braking Systems sold to automobile manufacturers and others in the United States. The combination and conspiracy engaged in by the Defendants and their co-conspirators was an unreasonable restraint of interstate and

foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection, and unjust enrichment laws.

9.     According to the Commission Decision issued by the EC's DG Competition, Defendants and their co-conspirators participated in a set of agreements and concerted practices concerning the exchange of sensitive business information for the purposes of reducing competitive uncertainty in the area of sales of Electronic Braking System through:

(a)     Participating in meetings, phone conversations, and email correspondences to exchange competitively sensitive business information regarding Electronic Braking Systems with the aim of coordinating their market conduct relating to certain automobile manufacturers;

(b)     Exchanging, during those meetings, phone conversations, and email correspondences, information regarding their willingness to accept an automobile manufacturer's three-year-policy and another automobile manufacturer's four-year-policy clause[2] and discussing these automobile manufacturers' purchasing terms and conditions;

---

[2] In 2008, an automobile manufacturer asked for price commitments for after-series components. Suppliers were asked to supply components for three years after the end of production at the same price as during the active series production phase of a

*(continued)*

(c)     Exchanging, during those meetings, phone conversations, and email correspondences, information concerning an automobile manufacturer relating to raw material cost compensation, cost transparency, and volume reductions.

(d)     Exchanging, during those meetings, phone conversations, and email correspondences, information with a view to reducing competitive uncertainty for the Defendants' supplies of Electronic Braking Systems to certain automobile manufacturers.

10.     As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiffs and the Classes (as defined below) paid artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems during the Class Period and have thereby suffered antitrust injury to their business or property.

## **JURISDICTION AND VENUE**

11.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition,

---

given vehicle, hence "three-year policy" or "3YP." Another automobile manufacturer's "4YP" (also 4JPB or "4-Jahrespreisbindung") led to a similar customer request.

consumer protection laws, and the common law of unjust enrichment, and seek to obtain restitution, recover damages, and secure other relief against the Defendants for violations of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and 28 U.S.C. §§ 1331 and 1337. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (i) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from the Defendants; and (ii) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

13.     Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found in or transact business in this District.

14.     This Court has *in personam* jurisdiction over Defendants because each of the Defendants either directly or through the ownership and/or control of their subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Electronic Braking Systems throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. The Defendants also conduct business throughout the United States, including in this District, and have purposefully availed themselves of the laws of the United States.

15.     The Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

16.     The activities of the Defendants and their co-conspirators directly targeted the United States Vehicle market and were within the flow of, were intended to have, and did have, a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

17.     Electronic Braking Systems manufactured abroad by the Defendants and sold for use in Vehicles in the United States are goods brought into the United States for sale and therefore constitute import commerce. To the extent any Electronic Braking Systems are purchased in the United States, and such Electronic Braking Systems do not constitute import commerce, the Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

18.     By reason of the unlawful activities hereinafter alleged, Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. The Defendants directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for Electronic Braking Systems, which conspiracy unreasonably restrained trade and adversely affected the market for Electronic Braking Systems.

19.     The Defendants' conspiracy and wrongdoing described herein adversely affected automobile dealers in the United States who purchased Vehicles in the United States which included one or more Electronic Braking Systems.

## PARTIES

### Plaintiffs

20.      Plaintiff V.I.P. is a California company with its principal place of business in Palm Springs, California. Plaintiff VIP is an authorized Mercedes, BMW, Infiniti, and Hyundai dealer who bought Vehicles containing Access Mechanisms manufactured by Defendants and/or their co-conspirators during the Class Period. Plaintiff V.I.P. purchased and received the aforementioned Vehicles in California.

21.      Plaintiff McGrath is a Delaware corporation, with its principal place of business in Cedar Rapids, Iowa. Plaintiff McGrath is an authorized Buick, Cadillac, Chevrolet, GMC, Pontiac, Chrysler, Jeep, Dodge, RAM, Kia, Mazda, and Volkswagen dealer, who bought Vehicles containing Access Mechanisms manufactured by Defendants and/or their coconspirators during the Class Period. Plaintiff McGrath purchased and received the aforementioned Vehicles in Iowa.

22.      Plaintiff Hodges is a Michigan corporation with its principal place of business in Ferndale, Michigan. Plaintiff Hodges is an authorized Subaru dealer who bought Vehicles containing Electronic Braking Systems manufactured by Defendants and/or their co-conspirators during the Class Period. Plaintiff Hodges purchased and received the aforementioned Vehicles in Michigan.

23.     Plaintiff Patsy Lou is a Michigan corporation, with its principal place of business in Flint, Michigan. Plaintiff Patsy Lou is an authorized Chevrolet dealer, who bought Vehicles containing Electronic Braking Systems manufactured by Defendants and/or their co-conspirators during the Class Period. Plaintiff Patsy Lou purchased and received the aforementioned Vehicles in Michigan.

24.     Plaintiff Lee's Summit is a Missouri corporation with its principal place of business in Lee's Summit, Missouri. Plaintiff Lee's Summit is an authorized Chrysler, Dodge, Jeep, RAM, and Nissan dealer, who bought Vehicles containing Access Mechanisms manufactured by Defendants or their co-conspirators during the Class Period. Plaintiff Lee's Summit purchased and received the aforementioned Vehicles in Missouri.

25.     Plaintiff Don Weir is a Nevada corporation with its principal place of business in Reno, Nevada. Plaintiff Weir is an authorized Chrysler, Dodge and Jeep dealer, who bought Vehicles containing Access Mechanisms manufactured by Defendants and/or their coconspirators during the Class Period. Plaintiff Don Weir purchased and received the aforementioned Vehicles in Nevada.

26.     Plaintiff John Greene is a North Carolina corporation, with its principal place of business in Morganton, North Carolina. Plaintiff John Greene was an authorized Chrysler, Dodge, Jeep, RAM, Plymouth, and Oldsmobile dealer, who bought Vehicles containing Access Mechanisms manufactured by Defendants

11

and/or their co-conspirators during the Class Period. Plaintiff John Greene purchased and received the aforementioned Vehicles in North Carolina.

## Defendants

27.     When Plaintiffs refer to a corporate family or companies by a single name in the Complaint, they are alleging that one or more employees or agents of entities within that corporate family engaged in conspiratorial acts on behalf of every company in that family. The individual participants in the conspiratorial acts did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family. The individual participants entered into agreements on behalf of their respective corporate families. As a result, those agents represented the entire corporate family with respect to such conduct, and the corporate family was party to the agreements that those agents reached.

## Bosch Defendants

28.     Defendant Robert Bosch GmbH is a German corporation with its principal place of business in Gerlingen, Germany. During the Class Period, Defendant Robert Bosch GmbH – directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Electronic Braking Systems that were sold and purchased throughout the United States, including in this District.

29.     Defendant Robert Bosch LLC is a Delaware corporation with its principal place of business 38000 Hills Tech Drive, Farmington Hills, Michigan. On information and belief, it is a subsidiary and wholly owned and/or controlled by its parent, Robert Bosch GmbH. On information and belief, Defendant Robert Bosch LLC manufactured, marketed and/or sold Electronic Braking Systems that were sold and purchased throughout the United States, including in this District, during the Class Period. At all times during the Class Period the activities of Robert Bosch LLC were under the control and direction of Robert Bosch GmbH, which controlled its policies, sales, and finances.

## AGENTS AND CO-CONSPIRATORS

30.     Each Defendant acted as the principal of or agent for the other Defendants and Co-conspirators with respect to the acts, violations, and common course of conduct alleged herein.

31.     Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with the Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

32.    Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

## Continental Co-Conspirators

33.    Continental AG is a German corporation with its principal place of business in Hannover, Germany. During the class period, Continental AG—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Electronic Braking Systems that were sold and purchased throughout the United States, including in this District.

34.    Continental Teves AG & Co. oHG is a German corporation with its principal place of business in Frankfurt, Germany. On information and belief, it is a subsidiary and wholly owned and/or controlled by its parent, Continental AG. On information and belief, Continental Teves AG & Co. oHG manufactured, marketed and/or sold Electronic Braking Systems that were sold and purchased throughout the United States, including in this District, during the Class Period. On information and belief, at all times during the Class Period, Continental Teves AG & Co. oHG's

activities in the United States were under the control and direction of its German parent.

35.   Co-Conspirator Continental Automotive GmbH is a German corporation with its principal place of business in Frankfurt, Hannover, Germany. On information and belief, it is a subsidiary and wholly owned and/or controlled by its parent, Continental AG. On information and belief, Continental Automotive GmbH manufactured, marketed and/or sold Electronic Braking Systems that were sold and purchased throughout the United States, including in this District, during the Class Period. On information and belief, at all times during the Class Period, Continental Automotive GmbH's activities in the United States were under the control and direction of its German parent.

36.   Co-Conspirator Continental Automotive Systems, Inc. is a Delaware company with its principal place of business in Auburn Hills, Michigan. It is an affiliate of and wholly controlled by its parent, Continental AG. Continental Automotive Systems, Inc.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed and/or sold Electronic Braking Systems that were purchased throughout the United States, including in this District, during the Class Period.

## FACTUAL ALLEGATIONS

### A.     The Braking Systems Industry

37.     Braking systems are an essential input for car manufacturers. The two most common systems available are Electronic Braking Systems and hydraulic braking systems, both of which consist of various component parts.

38.     Electronic Braking Systems prevent cars from skidding by providing electronic stability controls when braking (ABS) or under all driving conditions (ESC). Hydraulic braking systems consist of an actuation system and a foundation system. The actuation system is further made up of a brake booster and main brake cylinder, while the foundation system is made up of a disc brake with saddle or drum brake and wheel brake cylinder. Both Electronic Braking Systems and hydraulic braking systems use fluid to transfer pressure to the vehicle's braking mechanism, slowing the vehicle. Electronic braking systems prevent cars from skidding by providing electronic stability controls when braking (ABS) or under all driving conditions (ESC). Both Hydraulic Braking Systems and electronic braking systems can be contained within the same vehicle.

39.     Electronic Braking Systems are installed by OEMs in Vehicles as part of the automotive manufacturing process.

40.     For Vehicles, the OEMs – mostly large automotive manufacturers – purchase Electronic Braking Systems directly from Defendants and/or their co-

conspirators. Electronic Braking Systems may also be purchased by component manufacturers who then supply such systems to OEMs. These component manufacturers are also called "Tier 1 Manufacturers" in the industry. Tier 1 Manufacturers supply Electronic Braking Systems directly to an OEM.

41.     When purchasing Electronic Braking Systems, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis for model specific parts. Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately a year or more prior to the start of production, and Electronic Braking Systems are developed over a year in advance of a Vehicle entering the market. OEMs procure Electronic Braking Systems and other parts for U.S.-manufactured Vehicles in the United States and elsewhere.

42.     Defendants and their co-conspirators supplied Electronic Braking Systems to OEMs for installation in Vehicles manufactured and sold in the United States and elsewhere. Defendants and their co-conspirators manufactured Electronic Braking Systems (a) in the United States for installation in Vehicles manufactured and sold in the United States, (b) in Japan and elsewhere for export to the United States and installation in Vehicles manufactured and sold in the United States, and

(c) in Japan and elsewhere for installation in Vehicles manufactured in Japan and elsewhere for export to and sale in the United States.

43.     Plaintiffs and members of the proposed Classes purchased Electronic Braking Systems indirectly from one or more of Defendants and their co-conspirators. By way of example, an automobile dealer may indirectly purchase one or more Electronic Braking System from the Defendants or their co-conspirators as part of purchasing a Vehicle.

**B.      The Structure and Characteristics of the Electronic Braking Systems Market Render the Conspiracy More Plausible.**

44.     The Electronic Braking Systems market in the United States is conducive to a price-fixing agreement and has made collusion particularly attractive in this market because of its structure and other characteristics. Specifically, the Electronic Braking Systems market has: (1) high barriers to entry and (2) inelasticity of demand.

(a)     **The Electronic Braking Systems Market Has High Barriers to Entry.**

45.     A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supracompetitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely to enter the market. Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

46.     There are substantial barriers that preclude, reduce, or make more difficult entry into the Electronic Braking Systems market. A new entrant into the business would face costly and lengthy start-up costs, including multi-million-dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

(b)     **There is Inelasticity of Demand for Electronic Braking Systems.**

47.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so they continue to purchase despite a price increase.

48.     For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues, and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

49.     Demand for Electronic Braking Systems is highly inelastic. Demand for Electronic Braking Systems is inelastic because there are no close substitutes for these products. In addition, customers must purchase Electronic Braking Systems as an essential part of a Vehicle, even if the prices are kept at a supracompetitive level. Automobile dealers wanting to purchase a new car simply have no choice but to purchase Electronic Braking Systems.

### C.     Government Investigations

50.     A globally coordinated antitrust investigation took place in the United States, Europe, Canada, and Japan, aimed at suppliers of automotive parts in general, and Electronic Braking Systems in particular. A Japan Fair Trade Commission ("JFTC") official told a leading legal publication that the international automotive parts supplier investigation would continue to widen because the automotive industry as a whole comprises many sub-industries. He characterized the investigations being conducted by international antitrust authorities as "large and broad," and he declined to deny that this "would be history's largest case."

51.     The antitrust probe originated in Europe as the result of several European OEMs coming together to bring a complaint to the EC. The EC and the FBI have executed surprise raids at the European and U.S. offices of several automotive parts manufacturers as part of an investigation into anticompetitive conduct related to the manufacturing and sale of automotive parts.

52.     On February 8, 2010, the EC executed surprise raids at the European offices of certain automotive parts makers as part of an investigation int anticompetitive conduct related to the manufacturing and sale of automotive parts. The DOJ has confirmed that its automotive parts investigation is the largest criminal investigation that the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the illegal conduct. To date, as a result of its widespread investigation, the DOJ has charged 46 companies and 64 individuals with criminal antitrust violations and levied nearly $3 billion in criminal fines against various automotive parts manufacturers.

## D.     Existence of Cooperating Defendants in Foreign Investigations

53.     The EC provides immunity under the Commission Notice on immunity from fines and reduction of fines in cartel cases ("Leniency Notice").[3] On July 13, 2011, TRW applied for such immunity with respect to bilateral contacts it had with Bosch regarding sales of braking systems to an automobile manufacturer.

54.     On November 24, 2011, Bosch submitted an application under the Leniency Notice in connection with bilateral contacts with TRW and Continental regarding sales of hydraulic braking systems to an automobile manufacturer. Based

---

[3] Commission Notice on immunity from fines and reduction of fines in cartel cases, OJ C 298, 8.12.2006, p. 17.

on this information, the EC carried out inspections of Continental's premises related to the hydraulic braking systems conspiracy in September 2014.

55.    On December 9, 2014, the EC carried out inspections of Continental's premises related to the hydraulic braking systems conspiracy, leading Continental to submit its own leniency application on December 9, 2014. In its application, Continental revealed bilateral contacts with TRW and Bosch regarding sales of hydraulic braking systems to certain automobile manufacturers, as well as contacts with Bosch regarding sales of Electronic Braking Systems to another automobile manufacturer.

56.    On February 21, 2018, the EC concluded that Defendant Bosch and co-conspirator Continental violated EU competition law by exchanging information with the aim of coordinating their respective market behaviors, including pricing practices. For the Electronic Braking Systems conspiracy, Bosch was fined €19,348,000. Continental, having successfully fulfilled its cooperation requirements as the immunity applicant, was granted immunity from fines. For the hydraulic braking systems conspiracy, Bosch and Continental were each fined €12,072,00 and €44,006,000, respectively, while TRW received immunity from fines for successfully fulling its immunity applicant obligations.

E.     **Additional Criminal Pleadings in Related Markets in the Automotive Parts Industry**

57.     On September 29, 2011, the DOJ announced that Furukawa Electric Co. Ltd. agreed to plead guilty and to pay a $200 million criminal fine for its participation in a criminal price-fixing and bid-rigging conspiracy involving the sale of automotive wire harnesses and related products to automobile manufacturers.

58.     In the press release announcing the fine against Furukawa Electric Co. Ltd., Sharis A. Pozen, then the Acting Assistant Attorney General in charge of the DOJ's Antitrust Division, said that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped." The press release also quoted FBI's Special Agent in Charge Andrew G. Arena, who said that "[w]hen companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," and that "[t]he FBI is committed to aggressively pursuing any company involved in antitrust crimes."

59.     On January 30, 2012, the DOJ announced that Yazaki Corporation agreed to plead guilty and pay a $470 million criminal fine and DENSO Corporation agreed to plead guilty and pay a $78 million criminal fine for their respective involvement in multiple price-fixing and bid-rigging conspiracies in the sale of automotive parts to automobile manufacturers in the United States. According to the

three-count criminal Information filed against Yazaki, it engaged in three separate conspiracies in violation of the Sherman Act, 15 U.S.C. §1: (i) to rig bids for and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010; (ii) to rig bids for and to fix, stabilize, and maintain the prices of, instrument panel clusters ("IPCs") sold to certain automobile manufacturers in the United States and elsewhere from at least as early as December 2002 until at least February 2010; and (iii) to fix, stabilize, and maintain the prices of fuel senders sold to an automobile manufacturer in the United States and elsewhere. According to the two-count felony charge against DENSO Corporation, it engaged in conspiracies to rig bids for, and to fix, stabilize, and maintain the prices of, electronic control units ("ECUs") and heater control panels ("HCPs") sold to an automobile manufacturer in the United States and elsewhere from at least as early as March 1004 and continuing until at least February 2010.

60.    In the press release announcing the fines against Yazaki Corporation, its executives, and DENSO Corporation, Special Agent in Charge Andrew G. Arena said that "[t]his criminal activity has as significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been

occurring for at least a decade. The conduct had also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold[.]"

61. On April 3, 2012, the DOJ announced that G.S. Electech Inc. had agreed to plead guilty and to pay a $2.75 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, speed sensor wire assemblies used on antilock brake systems sold to an automobile manufacturer in the United States and elsewhere.

62. On April 23, 2012, the DOJ announced that Fujikura Ltd. had agreed to plead guilty and to pay a $20 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to an automobile manufacturer in the United States and elsewhere.

63. On June 6, 2012, the DOJ announced that Autoliv Inc. had agreed to plead guilty to a two-count criminal Information and to pay a $14.5 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by (i) agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain seatbelts sold to a Japanese automobile manufacturer; and (ii) agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain seatbelts, airbags, and/or steering wheels sold to a Japanese automobile manufacturer.

64.     On July 30, 2012, the DOJ announced that TRW Deutschland Holding GmbH had agreed to plead guilty and to pay a $5.1 million criminal fine for its involvement in a combination and conspiracy, through its employees, including high level employees of its wholly-owned subsidiaries, to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts, airbags and steering wheels sold to two German automobile manufacturers in the United States and elsewhere.

65.     On August 28, 2012, the DOJ announced that Nippon Seiki Co. Ltd. had agreed to plead guilty and to pay a $1 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, IPCs sold to an automobile manufacturer in the United States and elsewhere.

66.     On October 30, 2012, the DOJ announced that Tokai Rika Co. Ltd. agreed to plead guilty and pay a $17.7 million criminal fine for its involvement in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, HCPs sold to automobile manufacturers in the United States and elsewhere. Tokai Rika also agreed to plead guilty to a charge of obstruction of justice related to the investigation of the antitrust violation.

67.     On February 15, 2013, Scott Hammond, the Deputy Assistant Attorney General in the Antitrust Division, discussed the DOJ's ongoing automotive parts

26

investigation in a Thomson Reuters article. He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered. ***I say the biggest with respect to the <u>impact</u> on U.S. businesses…and the number of companies and executives that are subject to the investigation.***" (emphasis added).

68.     On July 16, 2013, the DOJ announced that Diamond Electric Mfg. Co. Ltd. had agreed to plead guilty and to pay a $19 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, ignition coils sold to automobile manufacturers in the United States and elsewhere.

69.     In the press release announcing the fine against Diamond Electric Mfg. Co. Ltd., Robert D. Foley III, Agent in Charge, FBI Detroit Division said "[t]hose who engage in price fixing, bid rigging and other fraudulent schemes harm the automotive industry by driving up costs for vehicle makers and buyers."

70.     On July 18, 2013, Panasonic Corporation agreed to plead guilty and to pay a $45.8 million criminal fine for its participation in a conspiracy to fix prices of various automotive parts including high intensity discharge ("HID") ballasts,

switches, and steering angle sensors installed in automobiles sold in the United States and elsewhere.

71.     On September 26, 2013, nine Japanese automotive suppliers agreed to plead guilty to conspiracy charges and pay more than $740 million in criminal fines for their roles in rigging the prices of more than 30 different automotive products:

(a)     Hitachi Automotive Systems Ltd. agreed to plead guilty and pay a $195 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of automotive parts, including air flow meters, fuel injection systems, electronic throttle bodies, and inverters, sold to automobile manufacturers in the United States and elsewhere;

(b)     Mitsuba Corporation agreed to plead guilty and to pay a $135 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of certain automotive parts sold to automobile manufacturers in the United States and elsewhere. Mitsuba Corporation's plea agreement defined "automotive parts" to include windshield wiper systems, windshield washer systems, starter motors, power window motors, fan motors, radiator fans, door mirrors, lamps, power seat motors, sunroof, door and tailgate motors, electric power steering motors, electronic throttle motors, horns, automotive electric relays and switches, automotive electric actuators, AC generations, and fuel pumps. Mitsuba also agreed to plead guilty to one count of obstruction of justice

because of the company's efforts to destroy evidence ordered by a high-level U.S.-based executive after learning of the U.S. investigation of collusion in the automotive parts industry;

(c)     Mitsubishi Electric Corporation agreed to plead guilty and to pay a $190 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of certain automotive parts sold to automobile manufacturers in the United States and elsewhere. For purposes of Mitsubishi Electric Corporation's plea agreement, "automotive parts" are defined to include, AC generators, air bag sensors, electronic control units, exhaust gas recirculation valves, fuel injectors, fuel pumps, HID ballasts, ignition coils, integrated units, keyless entry systems, MAP sensors, purge control valves, starter motors, throttle bodies, variable cam timing, and variable valve timing;

(d)     Mitsubishi Heavy Industries Ltd. agreed to plead guilty and to pay a $14.5 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of compressors and condensers sold to automobile manufacturers in the United States and elsewhere;

(e)     T.RAD Co. Ltd. agreed to plead guilty and to pay a $13.75 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of radiators and automatic transmission fluid

warmers ("ATF Warmers") sold to automobile manufacturers in the United States and elsewhere;

(f)     Valeo Japan Co. Ltd. agreed to plead guilty and to pay a $13.6 million criminal fine for its participation in a conspiracy to allocate the supply of, rig bids for, and to fix, stabilize and maintain the prices of air conditioning systems sold to automobile manufacturers in the United States and elsewhere;

(g)     JTEKT Corporation agreed to plead guilty and to pay a $103.27 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to fix, stabilize and maintain the prices of bearings and electric powered steering assemblies sold to automobile manufacturers in the United States and elsewhere;

(h)     NSK Ltd. agreed to plead guilty and to pay a $68.2 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to fix, stabilize and maintain the prices of bearings sold to an automobile manufacturer in the United States and elsewhere; and

(i)     Yamashita Rubber Co. Ltd. agreed to plead guilty and to pay an $11 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, raise and maintain the prices of automotive anti-vibration rubber products sold in the United States and elsewhere to automobile manufacturers.

72.     On the same day, September 26, 2013, then United States Attorney General Eric Holder presented the DOJ's most recent findings in the ongoing automotive parts investigation. He stated "[t]hese international price-fixing conspiracies affected more than $5 billion in automobile parts sold to U.S. car manufacturers. In total, more than 25 million cars . . .were affected by the illegal conduct." Then Attorney General Holder also described how the conspiracies worked: "[c]ompany executives met face to face in the United States and Japan – and talked on the phone – to reach collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies. In order to keep their illegal conduct secret, they used code names and met in remote locations. Then they followed up with each other regularly to make sure the collusive agreements were being adhered to." Then Attorney General Holder explained that the automotive parts conspiracies "targeted U.S. manufacturing, U.S. businesses and U.S. consumers. As a result of these conspiracies, Americans paid more for their cars."

73.     The diagram below, which was prepared by the DOJ, illustrates the September 26, 2013 guilty pleas and the corresponding automotive parts to which the various manufacturers have admitted price-fixing.



74.     On October 9, 2013, Takata Corporation announced that it agreed to pay $71.3 million to settle antitrust charges brought by the United States federal prosecutors for its participation in a conspiracy to price-fix seatbelts.

75.     On November 26, 2013, the DOJ announced that Toyo Tire & Rubber Co. Ltd. agreed to plead guilty and to pay a $120 million criminal fine for its participation in two separate conspiracies. Toyo Tire & Rubber Co. Ltd. engaged in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, raise, and maintain the

prices of automotive anti-vibration rubber products and automotive constant-velocity joint boot products sold to automobile manufacturers in the United States and elsewhere.

76.    On November 27, 2013, the DOJ announced that Stanley Electric Co. Ltd. agreed to plead guilty and to pay a $1.44 million criminal fine for its participation in a conspiracy to fix prices of automotive high-intensity discharge ("HID") lamp ballasts installed in automobiles sold in the United States and elsewhere.

77.    On January 16, 2014, the DOJ announced that Koito Manufacturing Co. Ltd. agreed to plead guilty and to pay a $56.6 million criminal fine for its participation in separate price-fixing conspiracies involving automobile lighting fixtures and automotive HID lamp ballasts installed in cars sold in the United States and elsewhere.

78.    On February 3, 2014, the DOJ announced that Aisan Industry Co. Ltd. agreed to plead guilty and to pay a $6.86 million criminal fine for its participation in a price-fixing conspiracy involving electronic throttle bodies sold to an automobile manufacturer in the United States and elsewhere.

79.    On February 13, 2014, the DOJ announced that Bridgestone Corp. agreed to plead guilty and to pay a $425 million criminal fine for its participation in

a conspiracy to fix prices of automotive anti-vibration rubber parts installed in automobiles sold in the United States and elsewhere.

80.     On April 23, 2014, the DOJ announced that Showa Corp. agreed to plead guilty and to pay a $19.9 million criminal fine for its participation in a conspiracy to fix prices and rig bids for pinion-assist type electric powered steering assemblies installed in cars sold in the United States and elsewhere.

81.     On August 19, 2014, the DOJ announced that NGK Sparkplug Co. Ltd. agreed to plead guilty and pay a $52.1 million criminal fine for its participation in a conspiracy to fix prices and rig bids for spark plugs, standard oxygen sensors, and air fuel ratio sensors installed in cars sold to automobile manufacturers in the United States and elsewhere.

82.     On September 29, 2014, the DOJ announced that Toyoda Gosei Co. Ltd. agreed to plead guilty and to pay a $26 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of certain automotive hoses sold to automobile manufacturers in the United States and by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of, automotive airbags and steering wheels sold to automobile manufacturers in the United States and elsewhere.

83.    On October 31, 2014, the DOJ announced that Hitachi Metals Ltd. agreed to plead guilty and to pay a $1.25 million criminal fine for its participation in a conspiracy to suppress competition in the automotive parts industry by agreeing to allocate sales of, rig bids for, and to fix, raise, and maintain the prices of automotive brake hoses sold to an automobile manufacturer and installed in Vehicles sold in the United States and elsewhere.

84.    On November 13, 2014, the DOJ announced that Aisin Seiki Co. Ltd. agreed to plead guilty and to pay a $35.8 million criminal fine for its participation in a conspiracy to allocate customers of variable valve timing devices installed in cars sold to automobile manufacturers in the United States and elsewhere.

85.    On November 24, 2014, the DOJ announced that Continental Automotive Electronics LLC and Continental Automotive Korea Ltd. agreed to plead guilty and to pay a criminal fine of $4 million for their roles in a conspiracy to rig bids of automotive IPCs installed in Vehicles manufactured and sold in the United States.

86.    On January 27, 2015, the DOJ announced that Sanden Corp. agreed to plead guilty and to pay a $3.2 million criminal fine for its participation in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to fix, stabilize, and maintain the prices of compressors

used in air conditioning systems sold to an automobile manufacturer in the United States and elsewhere.

87.   On March 31, 2015, the DOJ announced that Robert Bosch GmbH agreed to plead guilty and to pay a $57.8 million criminal fine for its participation in a conspiracy to fix prices and rig bids for and to fix, stabilize, and maintain the prices of certain automotive parts sold in the United States and elsewhere.

88.   On April 28, 2015, the DOJ announced that Yamada Manufacturing Co., Ltd. agreed to plead guilty and to pay a $2.5 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of steering columns sold to certain subsidiaries of automobile manufacturers in the United States and elsewhere.

89.   On September 3, 2015, the DOJ announced that NGK Insulators, Ltd. agreed to plead guilty and to pay a $65.3 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of ceramic substrates for automotive catalytic converters supplied to automobile manufacturers in the United States and elsewhere. The company also agreed to plead guilty to obstruction of justice for altering, destroying or concealing documents with the intent to impede the criminal antitrust investigation.

90.   On September 16, 2015, the DOJ announced that Kayaba Industries Co. Ltd. d/b/a KYB Corporation agreed to plead guilty and to pay a $62 million criminal

fine for its participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate markets, rig bids for, and to fix, stabilize, and maintain the prices of shock absorbers sold to certain automobile and motorcycle manufacturers in the United States and elsewhere.

91. On November 19, 2015, the DOJ announced that INOAC Corp. agreed to plead guilty and to pay a $2.35 million criminal fine for its participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of certain plastic interior trim automotive parts sold to an automobile manufacturer in the United States and elsewhere.

92. On March 17, 2016, the DOJ announced that Omron Automotive Electronics Co., Ltd. agreed to plead guilty and to pay a $4.55 million criminal fine for its participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of power window switches sold to an automobile manufacturer in the United States and elsewhere.

93. On May 16, 2016, the DOJ announced that Corning International Kabushiki Kaisha agreed to plead guilty and to pay a $66.5 million criminal fine for its participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix,

stabilize, and maintain the prices of ceramic substrates sold to automobile manufacturers in the United States and elsewhere.

94.     On June 15, 2016, the DOJ announced that a federal grand jury, sitting in the U.S. District Court for the Southern District of Ohio, returned two indictments charging Japanese automotive parts companies, their U.S. subsidiaries, and a total of five executives with criminal antitrust violations for their participation in international conspiracies to eliminate competition in the sale of automotive parts in the United States. One of the indictments charges Tokai Kogyo Co. Ltd., its wholly-owned U.S. subsidiary, Green Tokai Co. Ltd., and its former executive Akitada Tazumi with conspiring to rig bids for and fix the prices of automotive body sealing products sold to an automobile manufacturer for installation in Vehicles sold in the United States and elsewhere. The other indictment charges Maruyasu Industries Co. Ltd., its wholly-owned U.S. subsidiary, Curtis-Maruyasu America Inc., and their executives, Tadao Hirade, Satoru Murai, Kazunori Kobayashi and Yoshihiro Shigematsu, with conspiring to fix prices, allocate customers, and rig bids for automotive steel tubes sold to automobile manufacturers for installation in Vehicles sold in the United States and elsewhere.

95.     On July 20, 2016, the DOJ announced that Nishikawa Rubber Co. Ltd. agreed to plead guilty and to pay a $130 million criminal fine for its participation in a conspiracy to suppress and eliminate competition in the automotive parts industry

by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of automotive body sealing products sold to automobile manufacturers in the United States and elsewhere.

96. On August 9, 2016, the DOJ announced that Hitachi Automotive Systems Ltd. agreed to plead guilty and to pay a $55.48 million fine for its participation in a conspiracy to allocate markets, fix prices and rig bids for shock absorbers sold to Vehicle manufacturers in the United States and elsewhere from the mid-1990s until the Summer of 2011. According to the press release, although Hitachi Automotive Systems Ltd. previously agreed to plead guilty to price-fixing and bid-rigging various automotive parts, it failed to uncover and disclose that it had also conspired to fix the prices of shock absorbers.

97. On September 15, 2016, the DOJ announced that Alpha Corporation agreed to plead guilty and to pay a $9 million criminal fine for its participation in a conspiracy to rig bids, and to fix, stabilize, and maintain prices of automotive access mechanisms sold to automobile manufacturers in the United States and elsewhere.

98. On November 8, 2016, the DOJ announced that Usui Kokusai Sangyo Kaisha Ltd. agreed to plead guilty and to pay a $7.2 million criminal fine for its participation in a conspiracy to fix prices, allocate customers and rid bids of automotive steel tubes sold to automobile manufacturers in the United States and elsewhere.

99.    On March 7, 2017, DOJ announced that Kiekert AG agreed to plead guilty and to pay a $6.1 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of automotive side-door latches and latch minimodules sold to automobile manufacturers in the United States and elsewhere.

100.    On May 31, 2018, the DOJ announced that Maruyasu Industries Co. Ltd. pleaded guilty and agreed to pay a $12 million criminal fine for its participation in a conspiracy to fix prices, rig bids, and allocate customers for automotive steel tubes sold to automobile manufacturers in the United States and elsewhere.

101.    To date, 49 companies and 65 individuals have been charged in the Antitrust Division's ongoing investigation into price-fixing and bid-rigging in the automotive parts industry. Of the 49 companies charged, 47 have either pleaded guilty or agreed to plead guilty and altogether, they have agreed to pay nearly $3 billion in criminal fines.

102.    "[T]his criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring at least a decade. The conduct had also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold," said the FBI's Special Agent in Charge, Andrew G. Arena. "When companies partner to

control and price fix bids or contracts, it undermines the foundation of the United States' economic system.

## ILLUSTRATIVE EXAMPLES

103.     Bosch and Continental exchanged information regarding their Electronic Braking Systems sales to VW and, specifically, relating to the MLB evo-platform, which includes certain Audi models and the Porsche Macan. Following the RFQs for the MLB evo-platform, employees from Bosch and Continental engaged in meetings and phone conversations wherein employees from Bosch and Continental exchanged information regarding their company's respective bid.

## CLASS ACTION ALLEGATIONS

104.   Plaintiffs bring this action on behalf of themselves and as a class action under Federal Rules of Civil Procedure ("Rules") 23(a) and (b)(2), seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All automobile dealers that, during the Class Period (a) indirectly purchased Electronic Braking System(s) which were manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale which included one or more Electronic Braking System(s) manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant.

105.   Plaintiffs also bring this action on behalf of themselves and as a class action under Rules 23(a) and (b)(3) seeking damages pursuant to the common law of unjust enrichment and antitrust, unfair competition, and consumer protection laws of the states whose laws are set forth in the Second and Third Claims below, as well as the unjust enrichment laws of Missouri, Massachusetts, and Illinois.  The states whose laws are set forth in the Second and Third Claims below, as well as Missouri, Massachusetts, and Illinois, are collectively referred to as the "Indirect Purchaser States." These claims are brought by Plaintiffs on behalf of themselves and entities in the Indirect Purchaser States listed in the Second, Third, and Fourth Claims as follows on behalf of the following class (the "Damages Class"):

> All automobile dealers, in the Indirect Purchaser States, that, during the Class Period (a) indirectly purchased Electronic Braking Systems manufactured a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that included one or more Electronic Braking System(s) manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant.

106.   The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons or entities who purchased Electronic Braking

Systems directly, and persons in the End-Payor Class, as defined in the End-Payor complaint.

107.   While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) hundreds of members in each Class.

108.   Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a)   Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of Electronic Braking Systems installed in Vehicles sold in the United States;

(b)   The identity of the participants of the alleged conspiracy;

(c)   The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)   Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e) Whether the alleged conspiracy violated state antitrust and unfair competition laws, and/or state consumer protection laws, as alleged in the Second and Third Claims for Relief;

(f) Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g) Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injuries to the business or property of Plaintiffs and the members of the Classes;

(h) The effect of the alleged conspiracy on the prices of Electronic Braking Systems installed in Vehicles sold in the United States during the Class Period;

(i) Whether automobile dealers purchasing Vehicles containing Electronic Braking Systems have been deprived of free and open competition;

(j) Whether Plaintiffs and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(k) Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Classes;

(l)     The appropriate injunctive and related equitable relief for the Nationwide Class; and

(m)     The appropriate class-wide measure of damages for the Damages Class.

109.   Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems purchased indirectly from Defendants and/or their co-conspirators.

110.   Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

111.   The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

112.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will

permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

113.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

## PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

114.   The Defendants' price-fixing conspiracy had the following effects, among others:

(a)     Price competition has been restrained or eliminated with respect to Electronic Braking Systems;

(b)     The prices of Electronic Braking Systems have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)     Indirect purchasers of Electronic Braking Systems have been deprived of free and open competition; and

(d)    Indirect purchasers of Electronic Braking Systems paid artificially inflated prices.

115.   During the Class Period, Plaintiffs and the members of the Classes paid supracompetitive prices for Electronic Braking Systems as a result of the Defendants' conspiracy.   Automobile dealers ultimately bore the inflated prices. Those overcharges have unjustly enriched Defendants.

116.   The markets for Electronic Braking Systems and Vehicles are inextricably linked and intertwined because the market for Electronic Braking Systems exists to serve the Vehicle market. Without the Vehicles, Electronic Braking Systems have little to no value because they have no independent utility. Indeed, the demand for Vehicles creates the demand for Electronic Braking Systems. As stated in the 2010 Annual Report of Lear Corporation, an automotive parts supplier: "Our sales are driven by the number of vehicles produced by the automotive manufacturers, which is ultimately dependent on consumer fleet demand for automotive vehicles."

117.   Electronic Braking Systems are identifiable, discrete physical products that remain essentially unchanged when incorporated into a Vehicle. As a result, Electronic Braking Systems follow a traceable physical chain of distribution from Defendants to Plaintiffs and the members of the Classes, and any cost changes

attributable to Electronic Braking Systems can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

118.   Just as Electronic Braking Systems can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of Electronic Braking Systems affect prices paid by indirect purchasers of Vehicles containing Electronic Braking Systems.

119.   Hence the inflated prices of Electronic Braking Systems in Vehicles resulting from the Defendants' and their co-conspirators' bid-rigging and price-fixing conspiracy have ultimately been borne by Plaintiffs and the other class members.

120.   The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of Electronic Braking Systems and, as a direct and foreseeable result, the price of Vehicles containing Electronic Braking Systems. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis – called regression analysis – is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs. Thus, it is possible to isolate

and identify only the impact of an increase in the price of Electronic Braking Systems on prices for Vehicles even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of Electronic Braking Systems affects changes in the price of Vehicles. In such models, the price of Electronic Braking Systems would be treated as an independent or explanatory variable. The model can isolate how changes in the price of Electronic Braking Systems impact the price of Vehicles containing Electronic Braking Systems while controlling for the impact of other price-determining factors.

121.   The precise amount of the overcharge impacting the prices of Vehicles containing Electronic Braking Systems can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supracompetitive charge automotive dealers bore. Thus, the economic harm to Plaintiffs and class members can be quantified.

122.   On September 26, 2013, then United States Attorney General Eric Holder in the Antitrust Division presented the DOJ's then most recent findings in the ongoing automotive parts investigation. He stated "[t]hese international price-fixing conspiracies affected more than $5 billion in automobile parts sold to U.S. car manufacturers." Then Attorney General Holder also described how the conspiracies worked: "[c]ompany executives met face to face in the United States and Japan –

and talked on the phone – to reach collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies. In order to keep their illegal conduct secret, they used code names and met in remote locations. They followed up with each other regularly to make sure the collusive agreements were being adhered to." Then Attorney General Holder explained that the automotive parts conspiracies "targeted U.S. manufacturing, U.S. businesses and U.S. consumers.

123.   By reason of the violations of the antitrust and consumer protection laws alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Electronic Braking Systems than they would have paid in the absence of the Defendants' and their co-conspirators' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A.    The Parties Entered Into Tolling and Standstill Agreements

124.   On December 10, 2018 and December 12, 2018, Plaintiffs entered into Tolling and Standstill Agreements with TRW and Bosch, respectively.

125.    Each Tolling and Standstill Agreement tolled the running of any statute of limitations, statute of repose, or other time related defense based on federal, state or other law, whether at law, equity, or otherwise (including, but not limited to, defenses based on the doctrines of waiver, laches, acquiescence, or estoppel) that may be applicable to any claim for relief that arises from or relates to the facts, events, and circumstances alleged herein, for Plaintiffs and for all putative class members sought to be represented by Plaintiffs for the defined Tolling Period.

126.    Plaintiffs and TRW entered into Amended Tolling and Standstill Agreements on: December 10, 2019; March 9, 2020; May 8, 2020; and July 27, 2020. Pursuant to the July 27, 2020 Amended Tolling and Standstill Agreement, the Tolling Period began on July 27, 2020 and would remain in effect until the earlier of three months after July 27, 2020 or fourteen calendar days after a party provides notices of its intent to terminate the agreement. In accordance with this provision of the July 27, 2020 Amended Tolling and Standstill Agreement, Plaintiffs informed TRW of its intent to terminate on September 21, 2020.

127.    Plaintiffs and Bosch entered into an Amended Tolling and Standstill Agreement on December 10, 2019. Pursuant to this Amended Tolling and Standstill Agreement, the Tolling Period began on December 10, 2019 and would remain in effect until the earlier of one year after December 10, 2019 or fourteen calendar days

after a party provides notices of its intent to terminate the agreement. Plaintiffs subsequently resolved their claims against Bosch on December 21, 2020.

### B.  The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Their Claims

128.  Plaintiffs repeat and re-allege the allegations set forth above.

129.  Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest) February 21, 2018, the date that the EC publicly announced that Continental and Bosch participated in the Electronic Braking Systems conspiracy.

130.  Plaintiffs and members of the Classes are automobile dealers who purchased Vehicles for resale. They had no direct contact or interaction with the Defendants in this case and had no means from which they could have discovered the Electronic Braking Systems combination and conspiracy described in this Complaint before February 21, 2018.

131.  No information in the public domain was available to the Plaintiffs and the members of the Classes prior to February 21, 2018, the date the EC publicly announced that Continental and Bosch participated in a conspiracy to fix the prices of, and rig bids for Electronic Braking Systems.  Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of the Defendants' dealings with OEMs or other direct purchasers, much less the

fact that they and their co-conspirators had engaged in the combination and conspiracy alleged herein.

132.   For these reasons, the statute of limitations as to Plaintiffs' and the Classes' claims did not begin to run and has been tolled with respect to the claims that Plaintiffs and members of the Classes have alleged in this Complaint.

### C.   Fraudulent Concealment Tolled the Statute of Limitations

133.   In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until February 21, 2018, the date that the EC publicly announced that Bosch and Continental participated in the conspiracy alleged herein.

134.   Before that time, Plaintiffs and the members of the Classes were unaware of the Defendants' unlawful conduct and did not know before then that they were paying supracompetitive prices for Electronic Braking Systems throughout the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiffs and members of the Classes that even hinted to Plaintiffs that they were being injured by Defendants' unlawful conduct.

135.   The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

136.   Specifically, as then Attorney General Holder explained in connection with the DOJ's globally coordinated investigation into price-fixing in the Automotive parts industry, "[i]n order to keep their illegal conduct secret, [Defendants] used code names and met in remote locations."

137.   By its very nature, the Defendants' and their co-conspirators' anticompetitive conspiracy and unlawful combination were inherently self-concealing. Electronic Braking Systems are not exempt from antitrust regulation, and, thus, before February 21, 2018, Plaintiffs reasonably considered the Electronic Braking Systems industry to be a competitive industry. According to the EC's Decision, Continental and Bosch colluded by exchanging sensitive business information over the phone, over email, and at meetings with one another. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of the Defendants' Electronic Braking Systems prices before February 21, 2018, at the earliest.

138.   Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy

employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

139.   Throughout the course of the conspiracy, Continental and Bosch met and communicated in secret in order to conceal their conspiracy from the public and avoid detection thereof. They colluded by engaging in bilateral information exchanges over the phone, over email, and at meetings. In doing so, the conspirators coordinated their pricing in a manner to avoid detection by the OEMs. The exact dates and times of these communications and meetings are within the knowledge of Continental and Bosch.

140.   Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until, at the earliest, February 21, 2018, the date the EC publicly announced that Defendant  Bosch and co-conspirator Continental participated in the conspiracy alleged herein. Before that date, no facts or information would have caused a reasonable diligent person to investigate whether Defendants had participated in the conspiracy alleged herein.

141.   For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled and did not begin to run until February 21, 2018.

## FIRST CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiffs and the Nationwide Class)

142.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

143.   The Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

144.   The acts done by each of the Defendants as part of, and in furtherance of, their and their Co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

145.   During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Electronic Braking Systems, thereby creating anticompetitive effects.

146.   The anticompetitive acts were intentionally directed at the United States market for Electronic Braking Systems and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Electronic Braking Systems installed in Vehicles sold throughout the United States.

147.   The conspiratorial acts and combinations have caused unreasonable restraints in the market for Electronic Braking Systems.

148.   As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated automobile dealer purchasers in the Nationwide Class who purchased Electronic Braking Systems have been harmed by being forced to pay inflated, supracompetitive prices for Electronic Braking Systems.

149.   In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

150.   Defendants' and their co-conspirators' conspiracy had the following effects, among others:

(a)   Price competition in the market for Electronic Braking Systems has been restrained, suppressed, and/or eliminated in the United States;

(b)   Prices for Electronic Braking Systems sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)   Plaintiffs and members of the Nationwide Class who purchased Electronic Braking Systems indirectly from the Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

151.    Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Electronic Braking Systems purchased indirectly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

152.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

153.    Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Damages Class)

154.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

155.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Electronic Braking Systems in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

156.    The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive levels the prices for Electronic Braking

Systems, to rig bids for the sale of Electronic Braking Systems, and to allocate customers for Electronic Braking Systems in the United States.

157.   In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a)   participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Electronic Braking Systems at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Electronic Braking Systems sold in the United States;

(b)   allocating customers and markets for Electronic Braking Systems in the United States in furtherance of their agreements; and

(c)   participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

158.   Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate customers with respect to Electronic Braking Systems.

159.   Defendants' and their co-conspirators' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

160.   Defendants and their Co-Conspirators have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq*.

(a)   Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)   During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected Arizona commerce.

(c)   As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

161.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, each of them. have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Electronic Braking Systems at supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Electronic Braking Systems.

(c)     For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they

combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of Electronic Braking Systems; and (2) Allocating among themselves the production of Electronic Braking Systems.

(d)     The combination and conspiracy alleged herein has had, *inter alia*, the following effects upon the commerce of California: (1) Price competition in the sale of Electronic Braking Systems has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Electronic Braking Systems sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who indirectly purchased Electronic Braking Systems or Vehicles containing Electronic Braking Systems manufactured by Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Electronic Braking Systems than they otherwise would have paid in the absence of Defendants' and their co-conspirators' unlawful conduct. As a result of Defendants' and their co-conspirators' violation of Section 16720 of the California Business and Professions

Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

162. Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a) Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Electronic Braking Systems or Vehicles in the District of Columbia; were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Electronic Braking Systems in the District of Columbia, paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b) During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

163.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

(a)     Defendants' and their co-conspirators' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Electronic Braking Systems' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)      During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected Hawaii commerce.

(c)      As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

164.   The Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq.*

(a)      The Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Electronic Braking Systems' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)    During the Class Period, the Defendants' and their co-conspirators' illegal conduct substantially affected Illinois commerce.

(c)    As a direct and proximate result of the Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, the Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of 740 Illinois Compiled Statutes 10/1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under 740 Illinois Compiled Statutes 10/1, *et seq*.[4]

165.  Defendants and their Co-Conspirators have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq*.

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at

---

[4] Dealership Plaintiffs recognize that their claims under the Illinois Antitrust Act were dismissed in the *Wire Harness* action.  Dealership Plaintiffs assert this claim here, individually and collectively, to preserve it for appeal

artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems. .

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected Iowa commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

166.    Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels

throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected Kansas commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

167.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Maine; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at

artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)     During the Class Period, the Defendants' and their co-conspirators' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

168.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at

artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b) During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected Michigan commerce.

(c) As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq*.

169. Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq*.

(a) Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at

artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)     During the Class Period, the Defendants' and their co-conspirators' illegal conduct substantially affected Minnesota commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

170.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at

artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased Electronic Braking Systems or Vehicles in Mississippi, were deprived of free and open competition, including in Mississippi; and (4) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased Electronic Braking Systems or Vehicles in Mississippi, paid supracompetitive, artificially inflated prices for Electronic Braking Systems, including in Mississippi.

(b)    During the Class Period, the Defendants' and their co-conspirators' illegal conduct substantially affected Mississippi commerce.

(c)    As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

171.  Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

172.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Electronic Braking Systems or Vehicles in Nevada, were deprived of free and open competition, including in Nevada; and (4) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Electronic Braking Systems or Vehicles in Nevada, paid supracompetitive, artificially inflated prices for Electronic Braking Systems, including in Nevada.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

173.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

(a)   Defendants' and their co-conspirators' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)   During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected New Hampshire commerce.

(c)   As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the

Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

174.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq*.

(a)   Defendants' and their co-conspirators' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)   During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected New Mexico commerce.

(c)   As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of New Mexico Stat.

Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq*.

175.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq*.

(a)   Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Electronic Braking Systems or Vehicles in New York, were deprived of free and open competition, including in New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in New York, paid supra-competitive, artificially inflated prices for Electronic Braking Systems when they purchased Electronic Braking Systems or Vehicles containing Electronic Braking Systems, including in New York, or purchased, including in New York, Electronic  Braking Systems or Vehicles containing Electronic  Braking Systems that were otherwise of lower quality than they would have been absent Defendants' and their co-conspirators' illegal acts, or were unable to purchase Electronic  Braking Systems or

Vehicles containing Electronic  Braking Systems that they would have otherwise purchased absent the illegal conduct.

(b)    During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected New York commerce.

(c)    As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*. The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

176.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic  Braking Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of

the Damages Class were deprived of free and open competition, including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Electronic Braking Systems or Vehicles in North Carolina, paid supra-competitive, artificially inflated prices for Electronic Braking Systems and Vehicles, including in North Carolina.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected North Carolina commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

177.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

(a)     Defendants' and their co-conspirators' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout North Dakota;

(2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct had a substantial effect on North Dakota commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

178.  Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Oregon; (2)

Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

179.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout South Dakota;

(2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased Electronic Braking Systems or Vehicles in South Dakota, were deprived of free and open competition, including in South Dakota; and (4) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased Electronic  Braking Systems or Vehicles in South Dakota, paid supracompetitive, artificially inflated prices for Electronic Braking Systems, including in South Dakota.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct had a substantial effect on South Dakota commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

180.    Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq*.

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class, including those who resided in Tennessee and/or purchased Electronic Braking systems or Vehicles in Tennessee, were deprived of free and open competition, including in Tennessee; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic  Braking Systems, including in Tennessee.

(b)    During the Class Period, Defendants' and their co-conspirators' illegal conduct had a substantial effect on Tennessee commerce.

(c)    As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

181.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Utah; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic  Braking Systems and Vehicles containing Electronic Braking Systems.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct had a substantial effect on Utah commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq*.

182.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*. Plaintiffs are entitled to relief pursuant to Vermont Stat. Ann. 9 § 2465 and any other applicable authority. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

183.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased Electronic Braking Systems or Vehicles in West Virginia, were deprived of free and open competition, including in West Virginia; and (4) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased

86

Electronic Braking systems or Vehicles in West Virginia, paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems, including in West Virginia.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

184.   Defendants and their co-conspirators have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq*.

(a)     Defendants' and their co-conspirators' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the

Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants and their co-conspirators have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

185.   Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' and their co-conspirators' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for Electronic Braking Systems and Vehicles containing Electronic Braking Systems than they otherwise would have paid in the absence of Defendants' and their co-conspirators' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed

to prevent and flows from that which makes Defendants' and their co-conspirators' conduct unlawful.

186.   In addition, Defendants and their co-conspirators have profited significantly from the aforesaid conspiracy. Defendants' and their co-conspirators' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

187.   Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**THIRD CLAIM FOR RELIEF**
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

188.   Plaintiffs incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

189.   Defendants and their co-conspirators knowingly engaged in unlawful, unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

190.   Defendants and their co-conspirators have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq*.

(a)   Defendants and their co-conspirators knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Electronic Braking Systems Products were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)   The aforementioned conduct on the part of Defendants and their co-conspirators constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)   Defendants' and their co-conspirators' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Electronic Braking Systems Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing  Braking Systems.

(d)     During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)     Defendants and their co-conspirators have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

191.   Defendants and their co-conspirators have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq*.

(a)     During the Class Period, Defendants and their co-conspirators marketed, sold, or distributed Electronic Braking Systems in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     During the Class Period, Defendants and their co-conspirators illegal conduct substantially affected California commerce and consumers.

(c)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(d)     Defendants' and their co-conspirators conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants and their co-conspirators, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

(e)     Defendants' and their co-conspirators' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(f)     Defendants' and their co-conspirators' acts or practices are unfair to purchasers of Electronic Braking Systems (or Vehicles containing them) in the

State of California within the meaning of Section 17200, California Business and Professions Code;

(g)     Defendants' and their co-conspirators' unlawful conduct had the following effects: (1) Electronic  Braking Systems price competition was restrained, suppressed, and eliminated throughout California; (2) Electronic  Braking Systems' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) Plaintiffs and members of the Damages Class, including those who resided in California and/or purchased Electronic Braking Systems or Vehicles in California, were deprived of free and open competition, including in California; and (4) Plaintiffs and members of the Damages Class, including those who resided in California and/or purchased Electronic Braking Systems or Vehicles in California, paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems, including in California.

(h)     Defendants' and their co-conspirators' acts and practices are unlawful, fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(i)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(j)     The unlawful, fraudulent, deceptive, and unfair business practices of Defendants and their co-conspirators,' and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for Electronic Braking Systems (or Vehicles containing them). Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' and their co-conspirators' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

192.    Defendants and their co-conspirators have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.

(a)     Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Florida; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems; and (5) Reasonable purchasers in Florida were deceived into believing that they were paying competitive prices for their Vehicles and Electronic Braking Systems.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected Florida commerce and consumers.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     Defendants and their co-conspirators have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

193. Defendants and their co-conspirators have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a)   Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Electronic Braking Systems were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)   Plaintiffs were not aware of the Defendants' and their co-conspirators' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants and their co-conspirators for Electronic Braking Systems. Defendants and their co-conspirators had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Electronic Braking Systems because they were unaware of the unlawful overcharge and because they had to purchase Electronic Braking Systems in order to be able to operate their Vehicles. Defendants' and their co-conspirators' conduct with regard to sales of Electronic Braking Systems, including their illegal conspiracy

to secretly fix the price of Electronic Braking Systems at supracompetitive levels and overcharge automobile dealers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants and their co-conspirators at the expense of Plaintiffs and the public. Defendants and their co-conspirators took grossly unfair advantage of Plaintiffs.

(c)     The aforementioned conduct on the part of Defendants and their co-conspirators constituted "unconscionable trade practices," in violation of N.M.S.A. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Electronic Braking Systems as set forth in N.M.S.A. § 57-12-2E, due to the inflated prices paid by Plaintiffs and Class members for Vehicles and Electronic Braking Systems.

(d)     Defendants' and their co-conspirators' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems.

(e)     During the Class Period, Defendants' and their co-conspirators' illegal conduct substantially affected New Mexico commerce and consumers.

(f)     As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(g)     Defendants and their co-conspirators have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

194.    Defendants and their co-conspirators have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Electronic Braking Systems were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants and their co-conspirators deceptively led purchasers, such as Plaintiffs and Class members to believe that the Electronic Braking Systems

they had purchased inside Vehicles had been sold at legal competitive prices, when they had in fact been sold at collusively obtained inflated prices, that were ultimately borne by automobile dealers.

(c)     The conduct of Defendants and their co-conspirators described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in injuries to purchasers and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     Because of Defendants' and their co-conspirators' unlawful trade practices in the State of New York, New York purchasers who indirectly purchased Electronic Braking Systems were misled to believe that they were paying a fair price for Electronic Braking Systems or the price increases for Electronic Braking Systems were for valid business reasons; and similarly situated purchasers were potentially affected by Defendants' conspiracy.

(e)     Defendants' and their co-conspirators unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, who

resided in and/or made purchases of Vehicles or Electronic Braking Systems in New York, were deprived of free and open competition and were subject to Defendants' and their co-conspirators deceptive practices in New York; and (4) Plaintiffs and members of the Damages Class, who resided in and/or made purchases of Vehicles or Electronic Braking Systems in New York, paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems, and were subjected to Defendants' deceptive practices.

(f)     Defendants and their co-conspirators knew that their unlawful trade practices with respect to pricing Electronic Braking Systems would have an impact on all purchasers in New York and not just the Defendants' and their co-conspirators' direct customers.

(g)     Defendants and their co-conspirators knew that their unlawful trade practices with respect to pricing Electronic Braking Systems would have a broad impact, causing class members who indirectly purchased Electronic Braking Systems to be injured by paying more for Electronic Braking Systems than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(h)     During the Class Period, Defendants and their co-conspirators marketed, sold, or distributed Electronic Braking Systems in New York, and Defendants' illegal conduct substantially affected New York commerce and New York purchasers.

(i)     During the Class Period, each of the Defendants and their co-conspirators named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Electronic Braking Systems in New York.

(j)     Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

195.   Defendants and their co-conspirators have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

(a)     Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Electronic Braking Systems were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The conduct of the Defendants and their co-conspirators described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North

Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)      Defendants' and their co-conspirators' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Electronic Braking Systems or Vehicles in North Carolina, were deprived of free and open competition, including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Electronic Braking Systems or Vehicles in North Carolina, paid supracompetitive, artificially inflated prices for Electronic Braking Systems and Vehicles containing Electronic Braking Systems, including in North Carolina.

(d)      During the Class Period, Defendants' and their co-conspirator' illegal conduct substantially affected North Carolina commerce and purchasers of Electronic Braking systems and Vehicles. Defendants' and their co-conspirators' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants and their co-conspirators to cover up their illegal acts.  Secrecy was integral to the formation, implementation and maintenance of Defendants' and their

co-conspirators' price-fixing conspiracy. Defendants and their co-conspirators committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Moreover, Defendants and their co-conspirators deceptively concealed their unlawful activities by conducting meetings and conversations in secret.

(e)     During the Class Period, each of the Defendants and their co-conspirators name herein, directly or indirectly and through affiliates they dominated and controlled, manufactured, marketed, sold and/or distributed Electronic Braking Systems in North Carolina.

(f)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants and their co-conspirators have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

196.     Defendants and their co-conspirators have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*[5]

---

[5] Dealership Plaintiffs recognize their claims under the South Carolina Unfair Trade Practices Act were dismissed in previous actions. Dealership Plaintiffs assert this claim here, individually and collectively, to preserve it for appeal.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' and their co-conspirators' illegal conduct had a substantial effect on South Carolina commerce.

(c)     As a direct and proximate result of Defendants' and their co-conspirators' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     Defendants and their co-conspirators have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (on behalf of Plaintiffs and the Damages Class)

197.  Plaintiffs incorporate by reference the allegations in the preceding paragraphs of this Complaint.

198.  Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims, *supra*, with the exception of California, but including South Carolina.  Plaintiffs also bring this claim under the laws of Missouri, Massachusetts, and Illinois on behalf of class members who have their primary places of business in those three states.

199.  As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants and their co-conspirators have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Electronic Braking Systems

200.  Defendants and their co-conspirators have benefited from their unlawful acts and it would be inequitable for Defendants and their co-conspirators to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for Electronic Braking Systems.

201.  Plaintiffs and the members of the Damages Class are entitled to Defendants' and their co-conspirators ill-gotten gains resulting from their unlawful,

unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

202. Pursuit of any remedies against the firms from which Plaintiffs and the members of the Damages Class purchased Vehicles containing Electronic Braking Systems subject to Defendants' and their co-conspirators' conspiracy would have been futile given that those firms did not take part in the Defendants' conspiracy.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiffs respectfully request that:

203. This Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) and direct that reasonable notice of this action, as provided by Rule 23(c)(2), be given to each and every member of the Classes;

204. That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a) An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b) A *per se* violation of Section 1 of the Sherman Act;

(c)     An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)     Acts of unjust enrichment by Defendants and their co-conspirators as set forth herein.

205.   Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

206.   Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

207.   Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, and their co-conspirators, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

208.   Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

209.   Plaintiffs and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

210.   Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

211.   Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

DATED: August 27, 2021

/s/ *Gerard V. Mantese*
Gerard V. Mantese
(Michigan Bar No. P34424)
Kathryn R. Eisenstein
(Michigan Bar No. P66371)
Mantese Honigman P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com
keisenstein@manteselaw.com

***Interim Liaison Counsel for Automobile Dealership Plaintiffs***

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Sims
Yifei Li

**CUNEO GILBERT & LADUCA, LLP**
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for
Dealership Plaintiffs*

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury, pursuant to Federal Rule of Civil Procedure

38(b), of all issues so triable.

DATED: August 27, 2021

/s/ *Gerard V. Mantese*
Gerard V. Mantese
(Michigan Bar No. P34424)
Kathryn R. Eisenstein
(Michigan Bar No. P66371)
Mantese Honigman P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com
keisenstein@manteselaw.com

***Interim Liaison Counsel for Automobile Dealership Plaintiffs***

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Sims
Yifei "Evelyn" Li
**CUNEO GILBERT & LADUCA, LLP**
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
sraiter@larsonking.com

***Interim Co-Lead Class Counsel for
Automobile Dealership Plaintiffs***